GO INTERNATIONAL, INC. et al., Appellants,

v.

Hazel O. LEWIS, Individually, et al., Appellees.

No. 6861.

Court of Civil Appeals of Texas, El Paso.

June 4, 1980.

Rehearing Denied June 25, 1980.

Rassman, Gunter & Boldrick, John E. Gunter, Leslie G. McLaughlin, Midland, for appellants.

Law Offices of Warren Heagy, Warren Heagy, Phillip E. Godwin, Odessa, for appellees.

## OPINION

WARD, Justice.

This is a wrongful death action arising out of a head-on collision between a motorcycle and a truck. Suit was brought for the benefit of the five minor children of the two deceased motorcycle riders. Trial was to a jury, and, based on issues submitted, judgment was entered for actual and exemplary damages for each of the five children. The corporate truck owner and truck driver appeal, both complaining of (1) the liability of the two Defendants for any exemplary damages, (2) the award of either actual or exemplary damages to two of the children who had been adopted by others prior to the death of their natural parents, and (3) the excessiveness of the award of the exemplary damages. We affirm in part, and reverse and render in part.

The accident occurred on Sunday, June 13, 1976, in Odessa. A heavy logging truck, driven by Jimmy Wester and owned by his employer, Go International, Inc., was returning from having made an induction log in Iraan, and was attempting to turn into the company parking lot. In doing so, the truck made a left hand turn into the path of an oncoming motorcycle, which was being ridden by Ray Wampler and his wife, Dovie Ellen Wampler. Mr. and Mrs. Wampler were killed immediately. They left five minor children; however, the two oldest had been adopted by an aunt when they were quite young and their names had been changed to Mills. Jimmy Wester, the truck driver, was twenty years of age at the time of the accident, had been driving for Go International since he was eighteen, and his driving record was bad. Suit was filed on behalf of the five children with Hazel Lewis, a grandmother, representing the three youngest, and Thelma Williams, an aunt, representing the two oldest. The Plaintiffs alleged that Wester was negligent in several respects, and that Go International was negligent in entrusting the truck to Jimmy Wester in view of his past driving record; that Go International was liable to the Plaintiffs under the doctrine of negligent entrustment; and, further, that, under the circumstances, the entrustment of the truck to Jimmy constituted gross negligence. In response to the Court's charge, the jury determined that the truck driver was guilty of two acts of ordinary negligence that proximately caused the collision, and acquitted the motorcycle driver of any fault. In response to those issues submitting the Plaintiffs' theory of negligent entrustment, the jury found that, on the occasion in question, Jimmy Wester was driving the truck with permission of Go International,

Inc.; that Jimmy Wester was a reckless and incompetent driver; that when Go International permitted him to drive the vehicle, Go International knew that he was a reckless and incompetent driver; and that Go International was guilty of gross negligence in entrusting the truck to a known reckless and incompetent driver. The jury assessed actual damages to the named children of Ray Wampler as follows:

> To Ouida Lucinda Wampler, $25,000.00;
>
> To Ellen Christine Wampler, $25,000.00;
>
> To Christopher Lynn Wampler, $35,000.00;
>
> To William Ray Mills, $7,500.00; and
>
> To Gerald Tennis Mills, $7,500.00.

Like sums were assessed to the same children because of the death of Dovie Ellen Wampler. Exemplary damages were awarded against Go International for the two deaths in the amount of $180,000.00 to each of the five named children. The parties stipulated that the two Defendants would pay the funeral expenses in the amount of $3,969.50. Based on the verdict and the stipulation, judgment was then entered for the benefit of the children against the two Defendants, jointly and severally, in the total sum of $1,103,969.50. Both Defendants appeal, and concede that the judgment was correct insofar as it awarded the actual damages for the three smaller children. The Plaintiffs likewise concede that the judgment was erroneous in awarding exemplary damages against Jimmy Wester, Individually.

■ A series of three points attack the award of any damages to the two older children who had been adopted out. At the time of trial, William Mills was sixteen and Gerald Mills was fifteen. Their aunt, Lorene Mills, adopted them fourteen years before when their natural parents were sick and unemployed. Appellees' evidence was that, after the adoption, they were still close and often visited the family. Further, the adoptive parent, Lorene Mills, and her husband had died within a year previous to the trial. The first point which we will consider is that there was error in allowing either actual or exemplary damages be-

cause, as a matter of law, the two Mills children sustained no actual damages. The point necessarily calls for an examination of the wrongful death and the adoption statutes. Actions for wrongful death did not exist at common law. The action for wrongful death is purely statutory and does not inure to the benefit of the children of a deceased by reason of inheritance. Under the Texas death statute, only those persons designated in the statute who have suffered some pecuniary loss by the death may recover. Article 4675, Tex.Rev.Civ.Stat.Ann.; *Marmon v. Mustang Aviation, Inc.*, 430 S.W.2d 182 (Tex.1968); 17 Tex.Jur.2d *Death by Wrongful Act* section 18 at 556 (1960). The act permits recovery by a decedent's surviving spouse, children and parents for the pecuniary losses they sustained by reason of the death. *Heil Company v. Grant*, 534 S.W.2d 916, 924 (Tex.Civ.App.—Tyler 1976, writ ref'd n. r. e.).

■ The effect of the adoption decree is now set out by Section 15.07, Tex. Family Code Ann. (1974).

> A decree terminating the parent-child relationship divests the parent and the child of all legal rights, privileges, duties, and powers with respect to each other, except that the child retains the right to inherit from its parent unless the court otherwise provides.

The provision results in a complete severance of the parent-child relationship, except that the adopted child preserves its right to inherit from and through his natural parents unless the decree expressly ordered otherwise. At the same time, upon the entry of the decree of adoption, a new parent-child relationship is created between the adopted child and the adoptive parents "as if the child were born to the adoptive parents during marriage." Section 16.09, Tex. Family Code Ann. (1974). Practically the same wording was found in the old adoption statute, Section 9, Article 46a.

The Appellees rely upon *Barnard v. Dallas Ry. & Terminal Co.*, 63 F.Supp. 344 (N.D.Tex. 1945), and *Miller v. Alexandria Truck Lines, Inc.*, 273 F.2d 897, 79 A.L.R.2d 812 (5th Cir. 1960). Both of those cases

held that minor children adopted by others could recover for the wrongful death of their natural parents under the Texas statutes.

In spite of the reasoning contained in the two federal cases, we feel that the point is controlled by the holding in the later case of *Patton v. Shamburger*, 431 S.W.2d 506 (Tex.1968). There, the issue was whether or not death benefits under the Workmen's Compensation Act could be paid to the workman's children who had been adopted by another man. Regardless of the rights that adopted children had to inheritance from their natural parent, the Court held that the right to workmen's compensation benefits were not obtained through an inheritance but were conferred by statute, and the portions of the adoption statute relating to inheritance were not applicable. The Court stated that the adopted children were no longer "minor children" of the natural father under the workmen's compensation statute, but became minor children of the adopted parents. The *Patton* holding has since been followed in *Zanella v. Superior Insurance Company*, 443 S.W.2d 95 (Tex. Civ.App.—Eastland 1969, writ ref'd), and *Banegas v. Holmquist*, 535 S.W.2d 410 (Tex. Civ.App.—El Paso 1976, no writ).

Following the reasoning made in the *Patton* case at page 507, the adoption statute now says that, upon adoption, all legal rights, privileges, duties and powers between the natural parent and the child with respect to each other are divested upon the adoption. Hence, if the Legislature had intended to make an exception with regard to those rights which accrue under the wrongful death statute, it could easily have said so. *Goss v. Franz*, 287 S.W.2d 289 (Tex.Civ.App.—Amarillo 1956, writ ref'd). We hold that the two adopted children were no longer "children" within the statute. See generally *Powell v. Gessner*, 231 So.2d 50 (Fla.Dist.Ct.App.1970) aff'd *Gessner v. Powell*, 238 So.2d 101 (Fla.1950); *Simmons v. Brooks*, 342 So.2d 236 (La.Ct. of App. 1977); Annot. 67 A.L.R.2d 745; Speicer, *Recovery for Wrongful Death* section 10.7 (1975).

■ Since there was no legal basis for the award of actual damages to the Mills children on account of the Wampler deaths, that portion of the judgment whereby they were awarded actual damages must be reversed. With that, they also lose their exemplary damages since such damages may never be awarded where the award of actual damages cannot be supported. *Garza v. San Antonio Light*, 531 S.W.2d 926 (Tex. Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.); *Pan American Petroleum Corporation v. Mitchell*, 338 S.W.2d 740 (Tex.Civ. App.—El Paso 1960, no writ). The constitutional provision, Section 26, Article 16, regarding exemplary damages in death cases does not change the rule regarding the necessity for actual damages. *Fort Worth Elevators Co. v. Russell*, 123 Tex. 124, 70 S.W.2d 397 (1934); 17 Tex.Jur.2d *Death by Wrongful Act* section 64 at 628 (1960). The Appellants' point 11 is sustained.

■ A series of evidentiary points attack the various jury findings that establish the Appellees' claim that Go International was grossly negligent in knowingly entrusting a large truck to a reckless and incompetent driver. In this regard, punitive damages can be awarded against a master or other principal because of an act of an agent if the agent was unfit and the principal was reckless in employing him. *King v. McGuff*, 234 S.W.2d 403 (Tex.1950). Similar to the fact situation before us, it has been held that the corporate principal became liable for exemplary damages when it was grossly negligent in employing an incompetent driver, when the driver was guilty of ordinary negligence in causing the accident. *Montgomery Ward and Company v. Marvin Riggs Company*, 584 S.W.2d 863 (Tex.Civ.App.—Austin 1979, writ ref'd n. r. e.). As pointed out in this authority, several other cases contain such statements or reach such results. *Adams Leasing Company v. Knighton*, 456 S.W.2d 574 (Tex.Civ. App.—Houston [14th Dist.] 1970, no writ); *Goff v. Lubbock Bldg. Products*, 267 S.W.2d 201 (Tex.Civ.App.—Amarillo 1953, writ ref'd n. r. e.); *Hines v. Nelson*, 547 S.W.2d

378 (Tex.Civ.App.—Tyler 1977, no writ); *Wilson N. Jones Memorial Hospital v. Davis,* 553 S.W.2d 180 (Tex.Civ.App.—Waco 1977, writ ref'd n. r. e.).

■ With these principles in mind, the evidence shows that Jimmy Wester was the son of a vice president and regional manager of Go International, whose region included the Abilene and Odessa area. When Jimmy was eighteen, he graduated from high school and, while living with his parents in Abilene, began working for Go International as a regular driver of company logging trucks. He drove the trucks in several West Texas towns, including Odessa where he was ultimately transferred. It appeared that Jimmy regularly drove these heavy trucks from the time that he was eighteen until the time of the accident in question when he was twenty years of age, and continued to drive them for six months after the accident. These trucks carried explosives and radiation. Jimmy Wester's driving record for the period of the three years prior to the accident in question revealed six citations for speeding and two for wrecks which occurred prior to the one on June 13th. The two wrecks were admittedly caused by Jimmy's failing to see the vehicles in front of him. The last one occurred less than one month prior to June 13, 1976, and in it he turned a logging truck over, resulting in damages to the truck of $80,000.00. Further, these trucks are subject to the rules and regulations of the Federal Highway Administration as promulgated by the Department of Transportation, and those rules require that the driver of the logging trucks be at least twenty-one years of age. The evidence further showed that Jimmy's father and Mr. Peveto, who was the Go safety officer, knew of Jimmy's driving record, knew of the accidents, knew that he was under-age, and yet never stopped him from driving trucks until long after the fatal accident. Other evidence showed that the safety officer sent a list of employees under the age of twenty-one to all regional managers with instructions that those on the list were not to drive the heavy Go vehicles. Even in the face of these instructions, Jimmy was continually employed and, as stated, drove the heavy trucks at all times until some six months after the accident, when he was finally removed as a truck driver.

After considering only the evidence, and the inferences arising therefrom, which supports the jury's findings that Go International was grossly negligent in knowingly employing an incompetent driver, we overrule the legal sufficiency points.

Appellants argue that it was the official policy of Go International, in accordance with government regulations, not to permit anyone under twenty-one years of age to operate any truck, and that Mr. Peveto had spoken to the regional manager about young Wester to the effect that he shouldn't be driving. Jimmy Wester's father stated that he had ordered all district managers to comply with the federal regulations, and that Jimmy had taken the truck on the day in question without the district manager's consent, and merely upon the order of a field logging engineer. The jury considered this version as a poor excuse in view of Jimmy's continuous use of a logging truck for the period of three years and that the corporation had apparently intentionally ignored the federal regulations and the poor driving record because of the position of Jimmy's father and his implied consent that Jimmy be steadily employed. After considering all the evidence in the record, some of which has been detailed above, the Appellants' insufficient evidence points attacking the findings that Jimmy Wester was driving the truck with permission of Go International; that he was a reckless and incompetent driver; that Go International knew he was a reckless and incompetent driver; and that Go International was guilty of gross negligence in entrusting the truck to a known reckless and incompetent driver are overruled.

Points 14 and 15 present arguments whereby Go International seeks a remittitur of the exemplary damages because they were extremely excessive and bore no reasonable proportionate relationship to the actual damages. As previously stated, the

jury awarded the sum of $180,000.00 in exemplary damages to each of the children, and, as the case now stands, we are concerned only with that award to the three smallest children.

■ There is no rule to be followed by which an appellate court can determine whether the damages are too large or too small. Rule 328, Tex.R.Civ.P. All that the court can do, and all that is required by the rule, is to exercise its sound judicial judgment and discretion in the ascertainment of what amount should be awarded and then treat the balance, if any, as excess. *Flanigan v. Carswell*, 159 Tex. 598, 324 S.W.2d 835 (1959). In determining the amount of exemplary damages, the Court of Civil Appeals is directed to consider such matters as the degree of outrage produced by the evil, the frequency of the evil, and the size of the award needed to deter similar wrongs in the future. In addition, it has long been the law in Texas that the amount of exemplary damages should be reasonably proportioned to the actual damages found. *Southwestern Investment Company v. Neeley*, 452 S.W.2d 705 (Tex.1970).

■ After having considered the company's conscious disregard of the conduct of Jimmy Wester, who happened to be the vice president's son; the actual or implied permission granted to the son to continue driving the prohibited vehicles over a long period of time; considering the $80,000.00 wreck less than one month prior to the incident accident where the driver failed to receive a reprimand; considering the conscious indifference of the company after the fatal accident in still permitting Jimmy to drive; and, further, having considered the ratio between the actual damages awarded to the three youngest children and the amount of exemplary damages, we hold that the awards are not excessive. The points are overruled.

■ Since it was admitted error for the trial Court to enter judgment against the individual Defendant Jimmy Wester for exemplary damages without a finding of gross negligence on his part, the ninth and tenth points of error are sustained.

Insofar as the judgment of the trial Court awarded actual damages in the amount of $15,000.00 for the benefit of William Ray Mills and $15,000.00 for the benefit of Gerald Tennis Mills, and exemplary damages in the amount of $180,000.00 for the benefit of William Ray Mills and $180,000.00 for the benefit of Gerald Tennis Mills, that judgment is hereby reversed, and it is here rendered that they take nothing. Insofar as the judgment of the trial Court awarded exemplary damages in the amount of $180,000.00 for the benefit of each of the three children, to wit, Ouida Lucinda Wampler, Ellen Christine Wampler and Christopher Lynn Wampler, as against Jimmy Vernon Wester, that judgment is hereby reversed, and it is here rendered that they take nothing by way of such exemplary damages against Jimmy Vernon Wester. In all other respects, the judgment of the trial Court is affirmed.