Glenn Ray BROWN et al., Petitioners,

v.

EDWARDS TRANSFER COMPANY,
INC., Respondent.

No. C–7147.

Supreme Court of Texas.

Dec. 7, 1988.
Rehearing Denied March 8, 1989.

Terry Hyatt and Tony D. Crabtree, Hyatt & Crabtree, P.C., Brenda Jeffers Damuth, Robert W. Hartson, Inc., Dallas, for petitioners.

Warwick J. Jenkins, Jenkins and Jenkins, P.C., Waxahachie, Michael L. Knapek, Jackson, Walker, Winstead, Cantwell & Miller, Dallas, for respondent.

GONZALEZ, Justice.

This is a wrongful death action which presents two issues: (1) whether the illegitimate children of a male decedent may recover under the Texas Wrongful Death Act; and (2) whether it was reversible error for the trial court to have refused to submit a question as to the decedent's alleged contributory negligence. Although the court of appeals held that the children could recover under the Wrongful Death Act, it reversed and remanded the cause because the trial court had erred in not submitting the issue of contributory negligence to the jury. 740 S.W.2d 47.[1] We affirm the judgment of the court of appeals.

Robert L. Jenkins was an employee of Acme Paper Stock Company. On August 24, 1981, Jenkins was riding on a freight elevator when the cable broke. The elevator hoist motor fell on Jenkins which resulted in his death. The hoist motor and lifting cables were installed by employees of Edwards Transfer Company. Edwards' employees used steel cables to mount the hoist from an I-beam which ran along the ceiling in Acme's warehouse. The employees, however, did not use "softeners" to protect the cables against the sharp edges of the beam.

Acme intended that the platform be used solely as a freight elevator. Accordingly, Acme employees were warned not to ride the platform as it was not safe for use as a personnel elevator.

Glenn Ray Brown, Ricky Brown, and Kay King, Jenkins' illegitimate children, brought a wrongful death action against Acme and Edwards. Mary Jenkins, the decedent's mother, intervened as a party plaintiff. Acme's workers' compensation carrier, U.S. Fire Insurance Company, also intervened to recover benefits paid to Mary Jenkins.

The trial court rendered a summary judgment for Acme against the claims of Mary Jenkins and U.S. Fire. In addition, the decedent's illegitimate children settled their claim against Acme. Accordingly, Acme is not a party to this appeal.

The case against Edwards proceeded to trial under the theories of negligence and gross negligence. The jury found that the plaintiffs (Petitioners) were the biological children of the decedent. The jury also found that Edwards was negligent in failing to use cable "softeners" when installing the hoist and that this negligence proximately caused Jenkins' death. The jury further found that Edwards' actions constituted gross negligence and that the plaintiffs suffered damages. The trial court rendered judgment for the plaintiffs in accordance with the jury verdict.

*Illegitimate Children—Cause of Action*

The first issue is whether a male decedent's illegitimate offspring are his "children" for the purpose of bringing a cause of action under the Texas Wrongful Death Act. *See* TEX.CIV.PRAC. & REM.CODE

---

1. In an unpublished opinion, which we have ordered published, the court of appeals dealt with Edwards' remaining twenty-one points of error. ▮▮▮▮▮▮

ANN. §§ 71.001–.011 (Vernon 1986); *see also*, Note, *Illegitimates and Intestate Succession in Texas: Developments in the Law*, 16 HOUS.L.REV. 740, 741–42 (1979) (it has long been recognized in Texas that a child is illegitimate only to the putative father; a child's circumstances of birth do not affect its ability to inherit from its mother). Edwards makes two arguments on this issue. First, it asserts that the children have no standing to bring a cause of action for the wrongful death of their biological father. Second, assuming the illegitimate children have standing under the Wrongful Death Act, Edwards argues that there is no evidence that they are Jenkins' biological children.

The court of appeals held that Jenkins' illegitimate children were not required to comply with the requirements of section 42(b) of the Probate Code in order to recover under the Wrongful Death Act. 740 S.W.2d at 49. The court of appeals addressed both the no evidence and insufficient evidence points in its previously unpublished opinion, holding that sufficient evidence exists to support the jury findings that the children in question are Jenkins' biological children.

Jenkins married Bonnie Scarlett in October of 1954 and there is no indication they were ever divorced. As far as can be ascertained from the record, Bonnie Scarlett gave birth to one son while married to Jenkins. That son's name is Robert Lee Jenkins, Jr.

Another woman, Eva Ward, testified that she had sexual relations with Jenkins which resulted in the birth of Kay King in 1953. Jenkins subsequently lived with another woman, Cora Lee Brown, and they produced two offspring. Glenn Ray Brown was born in 1957, and Ricky Brown was born in 1958. Jenkins admitted to third parties that he was the father of Kay King, Glenn Ray Brown, and Ricky Brown. After the accident, these persons brought a cause of action for the wrongful death of their father. Robert Lee Jenkins, Jr. did not join in this cause of action.

Recovery under the Texas Wrongful Death Act is limited to an exclusive class of persons. Only the "surviving spouse, children, and parents of the deceased" are authorized to bring a suit under the Act. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 71.004(a) (Vernon 1986). Therefore, the critical question for Jenkins' children is whether the term "children," as set forth in the statute, applies to both legitimate and illegitimate children.

The Act itself does not provide a definition for the term "children." Edwards urges this court to interpret the word "children" under the Wrongful Death Act in accordance with the definitions set forth in the Probate Code. Section 3 of the Probate Code provides that except where the contrary is expressly stated, the unrecognized illegitimate child of a father is not the "child" of the putative father for the purposes of the Probate Code. TEX.PROB. CODE ANN. § 3(b) (Vernon 1980). Section 42(b) of the Probate Code provided, at the time of this litigation, that *the* child of the putative father becomes *a* "child" of the father under the Probate Code and for the *"purpose of inheritance"* under three exclusive circumstances: (1) when the child is born or conceived before or during the marriage of its father and mother; (2) when paternity is established by the involuntary proceedings under Chapter 13 of the Texas Family Code; or (3) when the biological father executes a voluntary statement of paternity under Section 13.22 of the Texas Family Code. Parental Inheritance Act, ch. 713, § 42, 1979 Tex.Gen. Laws 1743, *amended by* Illegitimate Children—Parental Inheritance Act, ch. 464, § 1, Vernon's Tex.Sess.Law Serv. 4085–86. *See also Mills v. Edwards*, 665 S.W.2d 153, 154–55 (Tex.App.—Houston [1st Dist.] 1984, no writ); *Batchelor v. Batchelor*, 634 S.W.2d 71, 72–74 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.).

■ While the Probate Code sets forth a comprehensive system for the settlement, partition, and distribution of property incident to an estate, "neither wrongful death nor survival actions are, or were intended to be, matters appertaining to or incident to estates." *Seay v. Hall*, 677 S.W.2d 19, 23 (Tex.1984); *see also* TEX.PROB.CODE

ANN. § 5A(b) (Vernon Supp.1988). Wrongful death benefits attach to those classes of persons identified by the Act who suffer injury as a result of the death; wrongful death benefits do not belong to the decedent's estate. *See Yowell v. Piper Aircraft Corp.*, 703 S.W.2d 630, 632 (Tex. 1986). Moreover, "[t]he action for wrongful death is purely statutory and does not inure to the benefit of the children of a deceased by reason of inheritance." *Go Int'l, Inc. v. Lewis*, 601 S.W.2d 495, 498 (Tex.Civ.App.—El Paso 1980, writ ref'd n.r. e.).

■ Unlike the Workers' Compensation statutes, the Wrongful Death Act has no express or implied reference to the inheritance or descent and distribution provisions of the Probate Code. *See* TEX.REV.CIV. STAT.ANN. art. 8306, § 8a (Vernon Supp. 1988). Additionally, section 71.010 of the Act expressly provides for the division of damages to be determined by the jury, not by descent and distribution laws. TEX. CIV.PRAC. & REM.CODE ANN. § 71.010 (Vernon 1986). We hold that "children," in the Wrongful Death Act, means filial descendants.

As noted previously, when this case went to trial, section 42(b) of the Probate Code provided only three means by which an illegitimate child could inherit through his or her paternal kindred. Since that time, section 42(b) has been amended to provide an additional procedure whereby illegitimate children may petition the probate court to determine their right of inheritance from the paternal kindred. TEX. PROB.CODE § 42(b) (Vernon Supp.1988). Upon a showing by clear and convincing evidence that a person is indeed the biological offspring of the father, that person is entitled to inherit through his or her paternal kindred, both ascendants and descendants. This amendment to the Probate Code shows that the legislature recognizes that illegitimate children should not be punished for circumstances in which they were born.

■ The legislature has applied the clear and convincing evidence standard for illegitimate paternity questions in both the Probate Code and the Family Code. TEX. PROB.CODE ANN. § 42(b) (Vernon Supp. 1988); TEX.FAM.CODE ANN. § 13.05(b) (Vernon 1986). For consistency we therefore adopt the clear and convincing evidence standard for an illegitimate person to establish paternity under the Wrongful Death Act. .

■ Turning to the no evidence point, considering only the evidence and inferences that support the finding of the jury and disregarding all evidence to the contrary, *King v. Bauer*, 688 S.W.2d 845, 846 (Tex. 1985); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965), we hold that there is some evidence to support the jury's finding that the children were the biological children of Jenkins.

*Contributory Negligence*

We next consider whether the court of appeals properly reversed the trial court on the basis that it was error not to submit to the jury the question of Jenkins' alleged contributory negligence. All controlling questions properly raised by the pleadings and evidence must be submitted to the jury. Tex.R.Civ.P. 278; *Garza v. Alviar*, 395 S.W.2d at 824.

■ The defense of contributory negligence requires findings that the victim was negligent and that the victim's negligence was a proximate cause of the injury or damages. *See Little Rock Furniture Mfg. Co. v. Dunn*, 148 Tex. 197, 222 S.W.2d 985, 989 (1949). Under Texas law, proximate cause encompasses the elements of cause in fact and foreseeability. *Williams v. Steves Indus. Inc.*, 699 S.W.2d 570, 575 (Tex.1985). Cause in fact means that the negligent act at issue was a substantial factor in producing the injury, and without such negligence no harm would have resulted. *Nixon v. Mr. Property Management Corp.*, 690 S.W.2d 546, 549 (Tex. 1985). Foreseeability means that the actor, as a person of ordinary intelligence, should have anticipated the danger of his act to others. *Id.* at 549-50. However, foreseeability does not require that the actor foresee the particular accident or injury which in fact occurs. *Trinity River Auth. v.*

*Williams,* 689 S.W.2d 883, 886 (Tex.1985). Nor does foreseeability require that the actor anticipate just how the injury will grow out of a particular dangerous situation. *Clark v. Waggoner,* 452 S.W.2d 437, 440 (Tex.1970). All that is required is that the injury be of such a general character as might reasonably have been anticipated and that the injured party be so situated with relation to the wrongful act that injury might reasonably have been foreseen. *Motsenbocker v. Wyatt,* 369 S.W.2d 319, 323 (Tex.1963) (citing *Carey v. Pure Distrib. Corp.,* 133 Tex. 31, 124 S.W.2d 847, 849 (1939)). *See also W. PROSSER & W. KEETON, THE LAW OF TORTS,* § 43 at 299 (5th ed. 1984) (citing, among other cases, *Biggers v. Continental Bus System, Inc.,* 157 Tex. 351, 303 S.W.2d 359 (1957)).

■ In *Motsenbocker,* parents of a 5½ year-old child left her and her younger brother unattended for approximately one hour. The child and her brother wandered off to a nearby park or playground where they met Mr. Motsenbocker and his young son who were engaged in flying a kite. Mr. Motsenbocker undertook to return the children to their home. It was during the course of this undertaking that the child was injured. When Motsenbocker told the children he would take them home, he instructed them and his four year-old son to go to his car and wait for him until he brought in the kite they had been flying. After the children got in the car, one of them must have turned the key which caused the car to start backing down the incline on which it was parked. *Id.* The child in question, in attempting to get out of the car, fell under the wheels and was injured. In *Motsenbocker,* this court addressed the issue of foreseeability as it related to a jury's finding that the injured child's parents were contributorily negligent. The court held that the parents of a young child could reasonably foresee that the negligent act of leaving their child unattended could result in the child being struck by a car. It did not matter that the exact way the child was struck was unusual because the general nature of the injury was not. *Id.* at 323–24. In this respect, *Motsenbocker* is analogous with the present case. Jenkins' injury was foreseeable, even though the manner in which it occurred was unusual.

■ The evidence at trial revealed that Jenkins had been warned not to ride the platform because it was not safe for use as a personnel elevator. Furthermore, there was evidence that Jenkins had told an Edwards employee prior to the accident that the hoisting mechanism was not properly secured. Notwithstanding the warning and Jenkins' own subjective awareness that the hoisting mechanism was not installed correctly, Jenkins boarded the platform. Arguably, "but for" Jenkins' negligence, he would not have been killed.

Reasonable minds can differ as to whether Jenkins was contributorily negligent. From all the evidence, a jury could infer that Jenkins could reasonably foresee *all* the dangers involved in riding the freight elevator. Thus, we agree with the court of appeals that there is some evidence that Jenkins' presence on the platform was a proximate cause of his death. It was therefore error for the trial court not to have submitted this issue.[2]

The judgment of the court of appeals is affirmed.

KILGARLIN, J., concurs.

SPEARS, J., concurs and dissents, joined by CULVER, J.

---

2. Under Tex.Civ.Prac. & Rem.Code Ann. § 33.011(4) (Vernon Supp.1988), the new comparative responsibility statute, the fact finder is no longer to apportion negligence that caused the occurrence nor to apportion the percentages of causation of the plaintiff's injuries. If the new statute were applicable to this case, arguably, this would require a reduction of Jenkins' award according to his "percentage of responsibility." The statute defines "percentage of responsibility" as "that percentage attributed by the trier of fact to each claimant [and] each defendant ... with respect to *causing or contributing to cause in any way,* whether by negligent act or omission ... [or] by other conduct or activity violative of the applicable legal standard ... [the] death ... for which recovery of damages is sought." (emphasis added).

ROBERTSON, J., concurs and dissents, joined by RAY and MAUZY, JJ.

KILGARLIN, Justice, concurring.

I concur with the judgment of this court both as to the entitlement of the illegitimate children to recover under the Wrongful Death Act (Tex.Civ.Prac. & Rem.Code Ann. §§ 71.001, et seq.) and the remanding of this cause so that the issue of contributory negligence might be submitted. I write only to elaborate on the discussion of foreseeability.

I heartily endorse the court's reaffirmance of the principle laid down in *Trinity River Authority v. Williams*, 689 S.W.2d 883, 886 (Tex.1985), that "[i]t is not necessary that the exact path leading to injury be anticipated as long as the general danger surrounding the event is appreciated." I further agree with the writing of an earlier court in *Clark v. Waggoner*, 452 S.W.2d 437, 440 (Tex.1970), that "[t]he test [of foreseeability] is not what the wrongdoer believed would occur; it is whether he ought reasonably to have foreseen that the event in question, or some similar event, would occur."

Footnote two of *Clark, id.* at 439, contains an excellent statement of the law taken from Harper & James, *The Law of Torts*, vol. 2, § 20.5(6), page 1147. Those two Yale University professors of law stated, "[f]oreseeability does not mean that the precise hazard or the exact consequences which were encountered should have been foreseen. Upon this all are agreed, whether they regard foreseeability as relevant only to the duty issue, or to questions of proximate cause as well." Then, borrowing from Oxford University's Corpus Professor of Jurisprudence Sir Frederick Pollock, writing in 38 L.Q.Rev. 165, 167 (1922) (a publication he founded), Fowler and James continue "when it is found that a man ought to have foreseen in a general way consequences of a certain kind, it will not avail him to say that he could not foresee the precise course or the full extent of the consequences, being of that kind, which in fact happened."

Of course, Pollock had great difficulty with the early English case *Heaven v. Pender*, 11 Q.B.D. 503 (1883), that established the concept of duty in respect to torts. Pollock believed that "everyone is bound to exercise due care towards his neighbours in his acts and conduct...." F. Pollock, *Law of Torts*, 334 (15th ed. 1951).

The case at bar presents me with an opportunity to write what is to be my last opinion as a member of this court (although because of the contingencies of court discussion of other of my authored opinions and motions for rehearing, it may not be the last opinion to appear in Southwestern Reporter, second series). Once again, the ominous specter of *Palsgraf v. Long Island Railroad Co.*, 248 N.Y. 339, 162 N.E. 99 (1928), is brought to the fore. It was *Palsgraf*, just sixty years ago, that utilized foreseeability to limit liability in terms of duty. Because the author of the majority opinion, Chief Judge Benjamin Nathan Cardozo (later of the United States Supreme Court) was a man of preeminent reputation, the holding of *Palsgraf* was almost immediately incorporated into the Restatement of Torts, and thus has since become firmly entrenched in the law.

By holding that no duty was owed unless it was foreseeable as to the exact way an accident would occur as a result of negligence, the *Palsgraf* majority worked its mischief on the law. Most attorneys will remember from law school the facts of *Palsgraf*. Ms. Palsgraf was standing on the platform of the Long Island Railroad, awaiting the arrival of a train. She was standing near some scales while the railroad guards were assisting a passenger to board a slowly moving train (unquestionably an act of negligence). One of the guards knocked from the passenger's hands a package he was carrying (again, arguably an act of negligence). The package contained explosives, which fell on the tracks and underneath the wheels of the moving train. An explosion occurred, shaking the platform, and causing the scales to topple onto Ms. Palsgraf, thereby injuring her. Rube Goldberg could not have devised a more complex chain of events. Nevertheless, the majority in *Pals-*

*graf* held that because the exact manner in which Ms. Palsgraf suffered injury was not foreseeable, there could be no recovery.

Dean Leon Green, prolific writer and teacher of so many Texas lawyers, criticized foreseeability as a sole determinative of duty. Green, *The Palsgraf Case*, 30 Colum.L.Rev. at 789 (1930). Likewise, what is often forgotten about *Palsgraf* is that out of a seven member New York Court of Appeals, three members dissented. Judge Williams Andrews, writing for the dissent, contended that "[e]veryone owes to the world at large the duty of refraining from those acts that may reasonably threaten the safety of others." 248 N.Y. at 350, 162 N.E. at 103.

Admittedly, this court, in this case, has not gone nearly as far as Judge Andrews' position that would eliminate foreseeability from consideration. However, by holding that it is not necessary that one foresee the exact consequences of negligent conduct, we are certainly reaffirming our departure from the harshness of the rule in *Palsgraf.* I predict that courts of this state will continue to carve exceptions to *Palsgraf* and will continue to broaden the once narrow scope of liability. Although we may be loathe to throw off the Cardozo collar of limited duty, "[t]he time may be approaching, however, when a trail blazing Texas court will recognize the merits of the *Palsgraf* dissent and its advantages in this progressive twentieth century. With constant social and economic fluctuations, Texas needs the flexibility of the Andrews concept of duty." Kilgarlin & Sterba–Boatwright, *The Recent Evolution of Duty in Texas*, 28 S.Tex.L.J. 241, 306 (1986).

As I leave this court, I can think of no more fitting epitaph as an expression of my philosophy of law.

SPEARS, Justice, concurring and dissenting.

I concur with the plurality opinion that the judgment of the court of appeals should be affirmed as to the cause of action of Mary Jenkins, the decedent's mother. As to the plurality's holding regarding the

causes of action of the alleged children of the decedent, however, I dissent.

I cannot agree with the court's speculative conclusion that the term "children" includes illegitimate children. Neither the cases cited by the majority, nor statutes, nor legislative history supports that interpretation. The Texas Wrongful Death Act limits standing to sue under its provisions to the surviving spouse, *children,* and parents. If the terms "spouses" and "parents" are given their common meaning under the statute, then so too should the term "children" be given its commonly accepted meaning.

The Probate Code provides that an unrecognized illegitimate child of a father is *not* a child of the putative father. TEX.PROB. CODE ANN. § 3(b) (Vernon 1980). The Probate Code also provided a method, applicable in this case, to allow an illegitimate child to inherit from a putative father. Under section 42(b), the child may inherit if (1) he is "born or conceived before or during the marriage of his father and mother"; (2) paternity is established by voluntary proceedings under Chapter 13 of the Texas Family Code; or (3) the putative father executes a voluntary statement of paternity. None of these prerequisites occurred here. The court in this case writes as though the legislature forgot to add another method, and legislatively adds another way to legitimate a child.

In another analogous statute, the Workers Compensation Act, the legislature provided that only heirs may recover death benefits under the act. TEX.REV.CIV. STAT.ANN. art. 8306 § 8a (Vernon Supp. 1988).

The wrongful death action under consideration here is not a common law action; it is purely statutory in origin and existence. To superimpose on the statute an interpretation that was never reflected in legislative history nor in analogous statutes can only be exposed for what it is—judicial legislating. *See Lucas v. United States,* 757 S.W.2d 687, 701 (Tex.1988) (Gonzalez dissenting) (court should not act like a "super-legislature" in violation of the separation of powers doctrine).

The United States Supreme Court has addressed issues concerning recovery by illegitimate children, and suggested that denying a cause of action in cases such as this poses no constitutional problems. In *Levy v. Louisiana*, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968) the Supreme Court held that illegitimate children may sue for the wrongful death of their *mother*, whose identity as parent was without dispute and existed as a biological fact, without resort to additional court proceedings. Moreover, the Court said that the children "were *dependent* on her" (emphasis added) and "they were indeed hers in the biological and in the spiritual sense." *Id.* at 72, 88 S.Ct. at 1511, 20 L.Ed.2d at 439.

A second case dealing with the rights of illegitimate children under statutory causes of action is *Weber v. Aetna Casualty & Surety Company*, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972). In allowing illegitimate children to recover worker's compensation benefits that Court held "Louisiana's denial of the equal recovery rights to *dependent* unacknowledged illegitimates" of a father "violates the Equal Protection Clause of the Fourteenth Amendment." *Id.* at 165, 92 S.Ct. at 1401, 31 L.Ed.2d at 773 (emphasis added). The Louisiana wrongful death statute expressly provided for recovery by "the legal dependent of the employee, actually and wholly dependent upon his earnings for support at the time of accident and death...." *Id.* at 174–75 n. 12, 92 S.Ct. at 1406 n. 12, 31 L.Ed.2d at 778 n. 12. The Court stated: "[I]n this case they are *dependent children,* and as such are entitled to rights granted other *dependent children.*" *Id.* at 170, 92 S.Ct. at 1404, 31 L.Ed.2d at 776 (emphasis original). The Court's rationale expressly limits its holding:

> By limiting recovery to dependents of the deceased, Louisiana substantially lessens the possible problems of locating illegitimate children and of determining uncertain claims of parenthood.

*Id.* at 174, 92 S.Ct. at 1406, 31 L.Ed.2d at 778. By its language, the Court strongly suggests that the action for wrongful death can be denied to non-dependent children.

All of the illegitimate children who seek recovery here were adults at the time of Jenkins' death. None of them lived in the home of Jenkins at the time of his death. There is no evidence Jenkins supported them or that they were dependent on him for any part of their living expenses.

This court subjects itself to self-imposed pressure to reach a result never intended by the legislature and not warranted by the statutory language. The rights afforded by the Wrongful Death statute stem from the existence of the family relationship and from no other societal source. It is consistent with legislative intent and the holdings of the U.S. Supreme Court to limit the cause of action for wrongful death to *dependent* children. Therefore, this court incorrectly and needlessly extends the wrongful death action to adult, non-dependent children.

CULVER, J., joins in this concurring and dissenting opinion.

ROBERTSON, Justice, concurring and dissenting.

I concur in part and dissent in part.

Although I agree with the majority's opinion regarding the illegitimate children's cause of action, I respectfully dissent from the majority's disposition and analysis of the contributory negligence issue. The majority holds that a factual question regarding proximate cause exists because there is some evidence (1) that Jenkins' presence on the platform was a cause in fact of death and (2) that Jenkins could have foreseen that he would be injured while riding the platform. While I agree with the majority that Jenkins may have been negligent in riding the platform, I cannot embrace the conclusion that Jenkins' riding on the platform was a proximate cause of his death. Specifically, I find error in the majority's conclusion that there is evidence of foreseeability.

The majority points out that foreseeability does not require that the actor foresee the particular accident or injury which in

fact occurs. *Trinity River Auth. v. Williams*, 689 S.W.2d 883, 886 (Tex.1985). Rather, liability will attach if the resulting accident or injury is of such a general character as might reasonably have been anticipated. *See Nixon v. Mr. Property Management Corp.*, 690 S.W.2d 546, 550–51 (Tex.1985); W. PROSSER & W. KEETON, *THE LAW OF TORTS* § 43 at 299 (5th ed. 1984).

Applying the law of proximate cause to this case, the majority finds that Jenkins possessed sufficient information concerning the danger of the platform, such that he could have reasonably anticipated an injury resulting from the installation of the hoisting system. Therefore, the majority concludes:

> From all the evidence, a jury could infer that Jenkins could reasonably foresee *all* the dangers involved in riding the freight elevator.

These statements are not only a misapplication of the reasoning in *Nixon*, but they also evidence an unjustified departure from one of the basic principles of negligence law.

In *Nixon*, we applied the law of proximate cause as a basis for reversing a summary judgment which had been granted in favor of the defendants in a personal injury action. Specifically, we concluded that based upon other violent crimes which had taken place at the defendants' apartments, a material fact question existed as to whether the defendants could have foreseen that the plaintiff would be sexually assaulted in one of their vacant apartments. In other words, the crime perpetrated against the plaintiff—being sexually assaulted—was of the "same general character" as the previous violent and assaultive crimes which had occurred at the apartments. Such a similarity, however, does not exist in this case between the injuries which Jenkins could have foreseeably suffered as a result of riding the platform and the occurrence which ultimately caused his death while he was on the platform. In short, the *general* character of the injury foreseeable was not "*all* the dangers involved in riding the freight elevator," but

rather personal injury directly attributable to riding an elevator not equipped with safety features for passengers.

At trial, there was expert testimony that even if the platform had been equipped with the necessary safety features, this in no way would have prevented the hoist from falling and killing Jenkins. In this case, Jenkins was warned not to ride the platform because it was to be used only as a freight elevator and it was not safe for use as a personal elevator. Thus the key inquiry is this: What was the "general character" of the injuries which Jenkins could have reasonably anticipated receiving as the result of riding the platform? Certainly, Jenkins could have anticipated falling from the platform since it had no side railings. In this vein, Jenkins could have foreseen that if he fell from the platform, he could be injured by falling freight. Finally, Jenkins could have anticipated that he could be injured by shifting freight or freight which fell from the platform. However, there is no evidence in the record to support the majority's conclusion that the hoist falling onto Jenkins was of such "general character" that the resulting injuries could have reasonably been anticipated by Jenkins when he rode the platform. Thus, the falling hoist cannot be viewed as a proximate cause of Jenkins' death. *Missouri Pac. Ry. Co. v. American Statesman*, 552 S.W.2d 99, 103 (Tex.1977).

I am also troubled by the majority's reliance upon *Motsenbocker v. Wyatt*, 369 S.W.2d 319 (Tex.1963). In *Motsenbocker*, this court reversed the court of appeals' holding that there was no evidence that leaving a young child unattended for a period of one hour was the proximate cause of the plaintiff's injuries. In doing so, the court reasoned:

> Small children when unattended are apt to get into trouble. They often disobey instructions and find themselves in positions of danger wherein because of their tender years and lack of experience they cannot protect themselves.

369 S.W.2d at 321. Although the *Motsenbocker* court recites the standard for foreseeability set out in *Carey v. Pure Distrib.*

229

*Corp.*, 133 Tex. 31, 35, 124 S.W.2d 847, 849 (1939), it is apparent that the court placed little or no emphasis on the *Carey* requirement that "the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen." 124 S.W.2d at 849.

The *Motsenbocker* court's flawed analysis of the foreseeability issue becomes apparent when it concludes:

> In the present case the exact way in which [the child] was injured was unusual, but the general nature of the injury was not. One of the most common injuries suffered by young children when left unattended and without supervision is that of being struck by a motor vehicle. *If the fact of negligence in leaving the child unattended be established, injury by being struck with an automobile seems clearly foreseeable....*

369 S.W.2d at 323–24 (emphasis added). Under this reasoning, foreseeability would have been found if the child had wandered off to the park and was killed by an automobile which fell from a cargo transport plane flying overhead. After all, one of the most common injuries suffered by young unattended children who are "apt to get into trouble" is "being struck by a motor vehicle." Thus, "if the fact of negligence in leaving the child unattended be established, injury by being struck with an automobile seems clearly foreseeable" because even though the exact way in which the child was injured was unusual, "the general nature of the injury was not." Consequently, under *Motsenbocker*, "foreseeability" is reduced to mere "possibility."

A common thread which runs throughout this court's opinions in the area of negligence law is that a person will be held liable only for those injuries which are *proximately caused* by his negligent conduct. *See, e.g., McClure v. Allied Stores of Texas, Inc.*, 608 S.W.2d 901, 903 (Tex. 1980); *Missouri Pac. Ry. Co.*, 552 S.W.2d at 103; *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 755 (Tex.1975). To hold otherwise would essentially result in the unworkable rule that a mere showing of negligence would automatically justify holding the negligent individual liable for all the resulting damages, no matter how remote and unforeseeable they may be. Such a result, however, has been expressly rejected by this Court. *Carey*, 124 S.W.2d at 849. The majority's opinion, though, attempts to expand the concept of proximate cause beyond the parameters established in *Carey*.

In the end, the majority's analysis ignores a basic requirement of negligence law—in order for an individual's negligent conduct to serve as a basis for imposing liability, there must be "[a] reasonably close causal connection between the conduct [of the negligent individual] and the resulting injury." W. PROSSER & W. KEETON, *THE LAW OF TORTS* § 30 at 165 (5th ed. 1984); *see also Sears v. Texas & N.O. Ry. Co.*, 247 S.W. 602, 607 (Tex.Civ. App.—Galveston 1922) ("[a]n injury is not actionable if it could not have been foreseen or reasonably anticipated."), *aff'd*, 266 S.W. 400 (Tex.Comm'n App.1924, judgmt adopted). Indeed, the correct rule was announced by the court of appeals in this case when it stated that

> [i]f the plaintiff cannot reasonably anticipate or have knowledge of the danger, he cannot be charged with contributory negligence, because knowledge is an essential element of contributory negligence....

740 S.W.2d at 50 (citing *J.R. Beadel & Co. v. De La Garza*, 690 S.W.2d 71, 73 (Tex. App.—Dallas 1985, writ ref'd n.r.e.)).

I would hold that there was no evidence of proximate cause to warrant submission of an issue on Robert Jenkins' contributory negligence. Accordingly, the trial court properly refused to submit such an issue. *Brown v. Goldstein*, 685 S.W.2d 640, 641 (Tex.1985).

RAY and MAUZY, JJ., join in this concurring and dissenting opinion.