# NO. 12-13-00302-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *LG ELECTRONICS, USA, INC. AND RENT-A-CENTER TEXAS, L.P., APPELLANTS* | *§* | *APPEAL FROM THE 159TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *JESSICA GRIGG, JENNIFER ALMARAZ AND JUSTIN LUKE, INDIVIDUALLY, APPELLEES* | *§* | *ANGELINA COUNTY, TEXAS* |

## *OPINION*

LG Electronics, USA, Inc. (LG) and Rent-A-Center Texas, L.P. (RAC) appeal from the trial court's denial of their respective motions for partial summary judgment. They raise one issue relating to standing. We reverse and remand for further proceedings.

## BACKGROUND

Jessica Grigg, Jennifer Almaraz, and Justin Luke (Appellees) are the biological children of Ellis B. Luke, Jr., who died in October 2011. Appellees filed a wrongful death action alleging that Luke died as a result of injuries sustained after a television manufactured by LG and rented to Luke by RAC caught fire. LG and RAC each filed a motion for partial summary judgment contending that Appellees did not have standing to assert a wrongful death claim because Luke's parental rights to each child had been terminated several years earlier. The trial court denied the motions, but shortly thereafter, signed an order permitting an interlocutory appeal. In its order, the trial court stated that "there is substantial ground for difference of opinion . . . on the legal

question concerning the effect of a termination order entered under the Texas Family Code on a claimant's right to bring a claim under the Wrongful Death Act."[1] This appeal followed.

**EFFECT OF TERMINATION DECREE**

In their sole issue, LG and RAC argue that a termination decree divests Appellees of the right to sue a third party for the death of their biological father under the Texas Wrongful Death Act (the Act). Appellees contend that because they were not adopted after the termination of their father's parental rights, they are beneficiaries under the Act.

## Standard of Review

Appellees' right to sue under the Act is a question of standing. Standing is a necessary component of a trial court's subject matter jurisdiction. *See **Tex. Ass'n of Bus. v. Tex. Air Control Bd.***, 852 S.W.2d 440, 445-46 (Tex. 1993). Whether a party has standing to pursue a cause of action is a question of law subject to de novo review. *See **Heckman v. Williamson County***, 369 S.W.3d 137, 150 (Tex. 2012); ***Exxon Corp. v. Pluff***, 94 S.W.3d 22, 26 (Tex. App.—Tyler 2002, pet. denied). When standing has been conferred by statute, the statute itself generally serves as the proper framework for analysis. *See **In re Russell***, 321 S.W.3d 846, 856 (Tex. App.—Fort Worth 2010, orig. proceeding [mandamus denied]).

## Applicable Law

In construing a statute, it is the court's task to ascertain and give effect to the legislature's intent. *See **Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.***, 145 S.W.3d 170, 176 (Tex. 2004). A statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it. ***Acker v. Tex. Water Comm'n***, 790 S.W.2d 299, 301 (Tex. 1990). In their statutory construction analysis, courts may consider (1) the object sought to be attained; (2) circumstances under which the statute was enacted; (3) legislative history; (4) common law or former statutory provisions, including laws on the same or similar subjects; (5) consequences of a particular construction; (6) administrative construction of the statute; and (7) the title (caption), preamble, and emergency provision of the statute. *See* TEX. GOV'T CODE ANN. § 311.023 (West 2013). When courts conduct a statutory construction analysis, the courts should "always refrain from rewriting text that lawmakers chose." ***Liberty Mut. Ins. Co. v. Adcock***, 412 S.W.3d 492, 494 (Tex. 2013) (citations omitted).

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d) (West Supp. 2013).

*The Wrongful Death Act*

Wrongful death benefits are purely a creature of statute, do not belong to an estate, and do not "inure to the benefit of the children of [the] deceased by reason of inheritance." ***Brown v. Edwards Transfer Co., Inc.***, 764 S.W.2d 220, 223 (Tex. 1988). The purpose of the Act is to provide a means whereby surviving spouses, children, and parents can recover for the loss of a family member for wrongful death. ***Garza v. Maverick Market, Inc.***, 768 S.W.2d 273, 275 (Tex. 1989). In 1927, the legislature named the beneficiaries of a wrongful death claim, and in 1985, the Act was codified. *See* Act of March 30, 1927, 40th Leg. R.S., ch. 239, § 2, 1927 Tex. Gen. Laws 356; Act of June 16, 1985, 69th Leg. R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3296 (to be codified at TEX. CIV. PRAC. & REM. CODE §§ 71.001-.031). The current version of the Act relating to beneficiaries remains unchanged from the 1985 codification and includes the "surviving spouse, children, and parents" of the deceased. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.004(a) (West 2008).

*Effect of a Termination Decree–Existing Law*

Prior to the Act's codification in 1985, the family code set forth procedures relating to the involuntary termination of parental rights. *See **Wiley v. Spratlan***, 543 S.W.2d 349, 352 (Tex. 1976). In 1976, the Texas Supreme Court described a termination decree as "complete, final, [and] irrevocable." ***Id***. (construing decrees entered under predecessor statute to Section 161.206(b) of the family code). The court further stated that the decree "divests for all time the parent and child of all legal rights, privileges, duties, and powers with respect to each other except for the child's right to inherit." ***Id***.; *see also **Holick v. Smith***, 685 S.W.2d 18, 20 (Tex. 1985). When the family code was recodified in 1995, a termination decree's effect remained unchanged. *See* Act of April 20, 1995, 74th Leg., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 217 (codified at TEX. FAM. CODE § 161.206(b)). Section 161.206(b) provides that an order terminating parental rights "divests the parent and the child of all legal rights and duties with respect to each other, except that the child retains the right to inherit from and through the parent unless the court otherwise provides." TEX. FAM. CODE ANN. § 161.206(b) (West 2008).

**Discussion**

LG and RAC contend that Appellees lack standing under the Act because "the termination orders terminated *all legal rights* [Appellees] had" with respect to Luke. LG and RAC do not attempt to redefine "children" under the Act, but instead focus on the legal effect of the

termination orders. To support their contention that Appellees have no legal right to sue under the Act, LG and RAC cite *Go International, Inc. v. Lewis*, 601 S.W.2d 495 (Tex. App.—El Paso 1980, writ ref'd n.r.e.).

In *Go International*, the court of appeals held that adopted children do not have standing under the Act to sue for the death of their natural parents. *See id.* at 499. The court referred to language in the adoption statute providing that "upon adoption, all legal rights . . . between the natural parent and the child with respect to each other are divested upon the adoption." *Id.* Based on this language, the court held that the adopted children were no longer "children" of their natural parents within the meaning of the Act, even though the adopted children retained the right to inherit from their natural parents. *See id.* at 498-99. The court reasoned that "if the Legislature had intended to make an exception with regard to those rights which accrue under the wrongful death statute, it could easily have said so." *Id.* at 499.

Appellees contend that *Go International* does not apply here because it involved adopted children. Citing three cases as authority, they argue that the Act's definition of children "encompasses biological children, regardless of [their] legal status[.]" Appellees first cite *Brown v. Edwards Transfer Co., Inc.*, 764 S.W.2d 220 (Tex. 1988). The *Brown* case concerned whether a deceased's illegitimate children had standing to bring a cause of action for the wrongful death of their biological father. *Id.* at 222. The defendants argued that the probate code's definition of "children" should be applied to the Act. *Id.* The supreme court rejected this argument, reasoning that the Act included no express or implied reference to the probate code, that the benefit of a wrongful death claim does not pass by reason of inheritance, and that "children" means filial descendants. *Id.* at 223.

Appellees next cite *Garza v. Maverick Market, Inc.*, 768 S.W.2d 273 (Tex. 1989). In *Garza*, the issue before the supreme court was whether a posthumously born and unrecognized illegitimate child had standing to sue for the wrongful death of his alleged father. *Id.* at 274. The court of appeals held that in order to have standing, an illegitimate child must comply with the requirements of the family and probate codes. *Id.* at 275. The supreme court reversed, stating that, in *Brown,* it had refused to "engraft" the probate code's requirements for an illegitimate child to inherit from his father onto the Act. *Id.* (citing *Brown*, 764 S.W.2d at 223). Following this rationale, the court held that it was also inappropriate to incorporate the requirements of the family code into the Act to define whether a plaintiff qualifies as a child. *Garza*, 768 S.W.2d at

4

275. The court explained that the family code's legitimation requirements were not designed or intended to address tort actions, nor were they designed to protect tortfeasors. *Id.* As a result, the court held that an illegitimate child need not be recognized in accordance with other bodies of law not specifically applicable to the Act. *Id.*

The third case Appellees cite is ***Buster v. Metropolitan Transit Authority***, 835 S.W.2d 236 (Tex. App.—Houston [14th Dist.] 1992, no pet.). In ***Buster***, a probate court had determined that the plaintiff was the common law husband of the deceased. *Id.* at 237. But when he filed a wrongful death claim, the deceased's mother argued that she was the sole statutory beneficiary entitled to wrongful death benefits and that the plaintiff's common law marriage was subject to relitigation. *Id.* Citing ***Garza*** and ***Brown***, the appellate court concluded that the probate court's determination of marital status was not binding because the probate code was not intended to provide the means to identify classes of persons entitled to sue under the Act. *See id.* at 237-38.

The cases Appellees cite establish that outside statutory schemes are not to be used to define beneficiaries under the Act. But these authorities do not address what effect, if any, the courts must give orders that terminate legal rights under statutory schemes necessarily beyond the provisions of the Act.

Here, it is undisputed that Appellees are the deceased's biological children, his parental rights were terminated before his death, and Appellees were never adopted. The termination decrees do not provide that the children retained any legal rights from Luke. By statute, however, an order terminating the parent-child relationship divests the child of all legal rights with respect to the parent except the right to inherit from him. *See* TEX. FAM. CODE ANN. § 161.206(b). This court is not permitted to ignore the legal effect of the termination decrees. *See e.g.*, ***Go Int'l***, 601 S.W.2d at 499; *see also* ***Amos v. Freight Lines, Inc.***, 575 S.W.2d 636, 638 (Tex. App.—Houston [14th Dist.] 1978, no writ) (although adoption proceedings had begun, children did not have standing under wrongful death act because they were not legally adopted by the deceased). Nor are we permitted to contravene legislative intent by creating a new class of beneficiaries under the Act. *See* ***Liberty Mut. Ins. Co.***, 412 S.W.3d at 494. Wrongful death benefits are conferred by statute, not through inheritance. *See* ***Brown***, 764 S.W.2d at 223. Therefore, we hold that Appellees do not have standing to sue under the Act for Luke's death. Accordingly, we sustain LG's and RAC's sole issue on appeal.

5

## DISPOSITION

Having sustained LG's and RAC's sole issues, we *reverse* the trial court's order denying their motions for partial summary judgment. We *remand* the cause for further proceedings consistent with this opinion.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered February 28, 2014.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

6



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**FEBRUARY 28, 2014**

**NO. 12-13-00302-CV**

**LG ELECTRONICS, USA, INC. AND RENT-A-CENTER TEXAS, L.P.,**
Appellants
V.
**JESSICA GRIGG, JENNIFER ALMARAZ AND JUSTIN LUKE, INDIVIDUALLY,**
Appellees

Appeal from the 159th District Court

of Angelina County, Texas (Tr.Ct.No. CV-01745-12-09)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the judgment be **reversed** and the cause **remanded** to the trial court **for further proceedings** in accordance with the opinion of this court and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*