Opinion issued March 3, 2005












     





In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00547-CV




TIM KANE, Appellant

V.

NXCESS MOTORCARS, INC., Appellee




On Appeal from the 80th District Court of
Harris County, Texas
Trial Court Cause No. 2002-47680




MEMORANDUM OPINION




          Appellant, Tim Kane, brought suit against appellee, Nxcess Motorcars, Inc.
(“Nxcess”), for violations of the Texas Deceptive Trade Practices Act (“DTPA”)


 and
fraud. In four issues, Kane contends that the trial court erred in granting summary
judgment in favor of Nxcess and erred in denying his motion for new trial.
          We reverse and remand.
FACTS AND PROCEDURAL HISTORY
          Nxcess is a Houston car dealer that sells 150-200 cars via the Internet each
month. In December 2001, Nxcess advertised a 1998 Mercedes-Benz CL500 on an
auction website, known as “ebay.” Representations in the ad included the following:
                  “This 1998 CL500 is in EXCELLENT!!! condition for having 27k
miles.” (Emphasis in original.)
                  “We have a pre-inspection policy. You check out your car before you
put your name on the bottom line. That way we don’t have any
problems after the car is sold and it costs us (and you) less
money.”(Emphasis in original.) 
                  “We have 12 of the . . . best qualified salesmen . . . anywhere in
Houston.”
                  “Hello my name is Mark Wolfe I have driven and walked this vehicle it
is in excellent shape, there are no imperfections.” (A salesman’s
testimonial.)
          Kane, a Tennessee resident, had purchased approximately 15 luxury sports cars
in the prior 10 years, but had never purchased a car over the Internet. He placed a bid
on the Mercedes on December 14, 2001. However, the bidding closed without
meeting Nxcess’s $49,900 reserve. The salesman, Wolfe, contacted Kane via email
and asked if he was still interested in purchasing the car. Kane responded by
telephone to discuss the terms and condition of the vehicle. 
          Kane was adamantly concerned about establishing that the car was in original
condition and had not sustained any prior damage or paint work. Kane specifically
asked Wolfe several times if the car had been repainted. Wolfe inquired with his
manager, Richard Ong, who told Wolfe that the car had been repainted on the right,
front quarter panel, but not to worry about it. In turn, Wolfe told Kane that the car
had not been repainted. Wolfe stated in his deposition that he was afraid that if he
told Kane that the car had been repainted, he would lose the sale and would lose his
job. 
          Kane asked if he needed to come and inspect the car or if it was as represented. 
Wolfe again replied, “To my knowledge, sir, it has not been painted. As far as I
know, as I’ve been told, it has not been painted.” Kane and Wolfe agreed on a price
of $42,000, and Kane was instructed to go back on ebay to complete the purchase. 
Three days later, on December 17, the sales contract was faxed to Kane in Tennessee. 
          Boilerplate provisions in the sales contract and “Buyers Guide” provided, in
pertinent part, the following:
        “Buyer understands the automobile being purchased from Seller
is sold to Buyer ‘As Is,’ and without any warranties or guarantees
verbal or otherwise.” 
        “The said condition of automobile being purchased is information
given to Seller by the previous Owner and is subject to
verification by Purchaser before finalizing this sale and accepting
delivery of said automobile. Purchaser’s signature below
acknowledges Purchaser’s full satisfaction of purchase
automobile’s condition including mechanical and structural.”
        “The information you see on the ‘As Is’ Buyer’s Guide form is
part of the contract.”
        “AS IS— NO WARRANTY. YOU WILL PAY ALL COSTS
FOR ANY REPAIRS.”
        “The dealer assumes no responsibility for any repairs regardless
of any oral statements about the vehicle.” 
        “IMPORTANT: Spoken promises are difficult to enforce. Ask
the dealer to put all promises in writing.”
        “Below is a list of major defects that can occur in used vehicles.”

          Without inspecting the car, Kane signed the contract, the Buyer’s Guide, and
the list of possible defects. Nxcess shipped the car to Kane. Upon delivery, Kane
took it to an appraiser for inspection. The appraiser found that the left front quarter
panel did not properly meet the hood, door, or upper panel and that part of the left
side of the car had been repainted.


 Kane called the prior owner, as listed on the title,
and learned that the car had been in an accident. The right side had been repainted
on the front quarter panel, the left side had been repainted from the front quarter panel
to the rear quarter panel, and a door had been replaced.

          Kane asked Nxcess to rescind the contract, refund the purchase price, and pay
his additional expenses. When Nxcess refused, Kane drove the car to Houston and
left it at the Nxcess lot. Nxcess stored the car until it sold in July 2003 for $37,000. 
Nxcess offered the sales proceeds to Kane, but Kane refused. Kane filed suit against
Nxcess, claiming violations of the DTPA


 and fraud. 

          After a period of discovery, Nxcess moved for a “no-evidence” summary
judgment, pursuant to Rule 166a(i), on the ground that there was no evidence of any
misrepresentation by Nxcess to satisfy the causation element of each of Kane’s
claims. Nxcess attached to its motion, as evidence, the ebay advertisement, the sales
contract containing the “as is” provisions and inspection provisions, and the
depositions of Kane and Ong. In his response to the motion, Kane’s evidence
included his sales contract, evidence of the July 2003 sale for $37,000, his deposition,
the depositions of Ong and Wolfe, and the appraiser’s report. On February 4, 2004,
the trial court granted summary judgment in favor of Nxcess pursuant to Rules
166a(c) and 166a(i), without specifying the specific grounds.


 

          On appeal, Kane contends that the trial court erred in granting the motion
because his evidence showed that Nxcess’s misrepresentations induced him to
purchase the car and, thereby, caused his injury. The sole issue on appeal is Kane’s
ability to meet the causation element of his claims.ANALYSIS

          Kane contends in his second and third issues that the trial court erred in
granting summary judgment for Nxcess because Kane’s evidence showed that
Nxcess’s misrepresentations were the producing and proximate cause of his injury;
that is, it was those misrepresentations that induced him to buy the car. Specifically,
in his second issue, Kane contends the “as is” provision in his purchase contract does
not negate causation because he was fraudulently induced to enter that contract. In
his third issue, Kane contends that his failure to inspect the car does not negate
causation because his inclination to inspect was thwarted by fraudulent
misrepresentations. 

Summary JudgmentWe first review the judgment under Rule 166a(i) standards, then Rule 166a(c). 
See Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004). 

A.      Standards of Review

          1.       Rule 166a(i) 

          After an adequate time for discovery, the party without the burden of proof may
move for summary judgment, with or without presenting evidence, on the basis that
there is no evidence to support an essential element of the non-moving party’s claim. 
Tex. R. Civ. P. 166a(i); Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 207
(Tex. 2002). The movant must specifically state the element as to which there is no
evidence. Tex. R. Civ. P. 166a(i). The burden shifts to the non-movant to produce
evidence that raises a fact issue on the challenged elements. See Johnson, 73 S.W.3d
at 207. If the non-movant brings forward more than a scintilla of evidence that raises
a genuine issue of material fact, then summary judgment is not proper. Flameout
Design & Fabrication, Inc. v. Pennzoil Caspian Corp., 994 S.W.2d 830, 834 (Tex.
App.—Houston [1st Dist.] 1999, no pet.). More than a scintilla exists when the
evidence “rises to a level that would enable reasonable and fair-minded people to
differ in their conclusions.” Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499
(Tex. 1995). We review the evidence in the light most favorable to the non-movant
and make all inferences in the non-movant’s favor. Morgan v. Anthony, 27 S.W.3d
928, 929 (Tex. 2000); Flameout Design & Fabrication, Inc., 994 S.W.2d at 834. 

          2.       Rule 166a(c)

          We review a trial court’s granting of a traditional summary judgment de novo. 
Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994). A summary judgment
under Rule of Civil Procedure 166a(c) is properly granted only when a movant
establishes that there are no genuine issues of material fact and that he is entitled to
judgment as a matter of law. Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt., 690
S.W.2d 546, 548 (Tex. 1985). A defendant moving for summary judgment must
either (1) disprove at least one element of the plaintiff’s cause of action, or (2) plead
and conclusively establish each essential element of an affirmative defense to rebut
plaintiff’s cause. Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1995). In deciding
whether there is a disputed material fact precluding summary judgment, every
reasonable inference must be indulged in favor of the non-movant and any doubts
resolved in its favor. Nixon, 690 S.W.2d at 548-49. 

          When a trial court does not state the basis for its decision in its summary
judgment order, as in this case, we must uphold the order if any of the theories
advanced is meritorious. State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380
(Tex. 1993).

 
B.      DTPA and Fraud Claims

          1.       Evidence of Causation

          Proof of causation is essential for recovery on each of Kane’s causes of action. 
Prudential Ins. Co. of Am. v. Jefferson Assoc., Ltd., 896 S.W.2d 156, 160-61(Tex.
1995). A claim under the DTPA requires proof of a producing cause.


 Tex. Bus. &
Com. Code Ann. § 17.50(a) (Vernon 2002). A producing cause requires “some
evidence that the defendant’s act or omission was a cause in fact of the plaintiff’s
injury.” Helena Chem. Co. v. Wilkins, 47 S.W.3d 486, 502 (Tex. 2001). A fraud
claim requires proof of proximate cause.


 Proximate cause means cause in fact plus
foreseeability. Brown v. Edwards Transfer Co., 764 S.W.2d 220, 223 (Tex. 1988). 
Cause in fact means that the act at issue was a “substantial factor in producing the
injury.” Id. Foreseeability means that the actor should have anticipated the danger
of his act; it does not require that he foresee the particular injury that in fact occurs.
Id.    Nxcess asserted in its motion for summary judgment that Kane produced no
evidence that a misrepresentation by Nxcess was the producing or proximate cause
of his damages. As evidence, Nxcess offered the advertisement, the contract and
Buyer’s Guide, and the depositions of Kane and Ong. These assertions shifted the
burden to Kane to produce some evidence of the challenged element. 

          In his response to the summary judgment motion, Kane offered as evidence that
Nxcess made misrepresentations that induced him to purchase the car, his deposition
statements, the deposition statements of Ong and Wolfe, and the “Paint Thickness
Chart” from his appraiser. 

          The evidence shows that, in the advertisement, Nxcess claimed that the car “is
in excellent shape for having 27k miles,” and “is in excellent shape, there are no
imperfections. . . .” However, Wolfe admitted in his deposition that he and Nxcess
knew that the car was not in excellent shape and had imperfections but chose not to
divulge it in the advertisement because the car would not sell, as follows: 

          Q.      Who said - - You said Mr. Ong said it has a little paint?
          A.      Yeah, it was the right front quarter panel, I believe is what he told me,
but he said it was only a –scratch, you know, cover-up, . . . .
                    . . . 
          Q.      Would you consider a prior collision to be an imperfection . . . even after
the damage has been repaired?
          A.      Oh, yeah. . . . If there’s a way that you can see it on Carfax, or there’s a
way that it’s known, you’re just killing yourself putting it on Ebay,
because they’ll find out about it no matter what you do, you know . . . .
          Q.      Even if it’s been repaired?
          A.      Even if it’s been repaired, because the thing is, if you put it on Ebay and
it had a collision, and you say to your knowledge you don’t know about
it, but if they find out that it even had a . . . minor collision, they won’t
buy the car, you know, who would buy a car that’s been wrecked . . . ?
          While the Texas Supreme Court has held that, generally, mere puffing or
opinion is not actionable, stating that a vehicle is in perfect condition goes beyond
mere puffing or opinion. Pennington v. Singleton, 606 S.W.2d 682, 687 (Tex. 1980);
see Smith v. Levine, 911 S.W.2d 427, 433 (Tex. App.—San Antonio 1995, writ
denied) (finding seller’s advertisement that house was “in excellent condition” to be
actionable because seller knew of defects).
          Further, the evidence shows that, during negotiations with Nxcess over the
telephone, Kane specifically asked about the condition of the car’s paint. Wolfe
testified that Kane was very adamant and asked several times if the car had been
repainted, as follows:
          A.      Mr. Kane . . . asked me straight out. He says, “Does it got any paint
work?” And I’m—that’s when I asked Richard. I says, “Does it got any
significant paint work . . . is there any paint work on this car that, you
know, is going to say”—he said, “No, don’t worry about it. It’s got a
little bit of paint but it’s just on the right front quarter panel.”
 
I said, “Fine.” I talked to Mr. Kane. I said, “No, I think it’s . . . a pretty
clean car. It’s a ‘98, . . . I’m sure it’s got a little bit of chips in it and
stuff.” He said, “No.” He said, “I just want to know it hasn’t been
repainted.” He said, “Because the last people I’ve dealt with told me it
wasn’t painted, . . . and it was repainted.” I said, “Well as far as I know,
. . . the car has not been painted. But he—we talked for quite a while.
                    . . . 
          Q.      So is it your—What is your understanding that would have happened if
you had mentioned that the front quarter panel had been repainted?
          A.      If I would have put it in Ebay that the car had been painted, we wouldn’t
have sold the car and then I would have been fired. If I put it—If I had
told Mr. Kane that the car had been painted, it would not have been sold
and I would have been fired. My job is to sell that vehicle, and if
I—even though I knew about the little touch up, Richard told me not to
worry about it.
                    . . . 
          Q.      Would you say that those customers that were purchasing from you
without actually physically going to where the vehicle was located,
would you say that they were relying upon Nxcess and it’s [sic]
salesmen in their description of the vehicle?
          A.      Of course. I mean it’s a trust issue . . . . 

          Indeed, Ong’s position in his deposition was as follows:

          Q.      Do you think that your dealership was someone that my client could
trust?
          A.      Obviously not.
          These assertions further provide some evidence that Nxcess had actual
knowledge at the time of the sale that the car had been repainted and chose to
affirmatively misrepresent that fact to Kane to induce him to purchase the car. The
evidence shows that Nxcess and its employees were aware that a buyer over the
Internet would rely on assessments by Nxcess of a vehicle’s condition. Indeed, Kane
asserted in his deposition that he did rely on Nxcess’s representations and would not
have purchased the car had the full truth been disclosed. See Tex. Bus. & Com.
Code Ann. § 17.46(b)(24) (Vernon Supp. 2004-2005) (requiring intent to induce 
consumer into transaction into which he would not have entered had information been
disclosed). 

          Kane has met his burden to show some evidence that Nxcess’s acts or
omissions caused his injuries. In addition, Kane produced evidence that the acts or
omissions were a substantial factor in causing his injuries.

          2.       Negating Causation: The “As Is” Provision

          Nxcess asserts that, regardless of any representations that may have been made
in advertising or by a salesperson, Kane signed a contract with an “as is” provision,
and this provision negates causation because Kane should not have relied upon any
other representations.

          The Texas Supreme Court has held that a valid “as is” agreement negates the
causation essential to recovery on DTPA violations and fraud because a buyer who
agrees to purchase something “as is” is agreeing “to make his own appraisal of the
bargain and to accept the risk that he may be wrong.” Prudential, 896 S.W.2d at 161. 
However, the court was careful to limit its holding to exclude those circumstances in
which a buyer has been induced to enter such agreement by a seller’s fraudulent
misrepresentation or concealment of information. Id. at 162. The nature of the
transaction and the totality of the circumstances must be considered. Id.

          The validity of an “as is” agreement is determined by (1) the relative
sophistication of the parties; (2) whether the agreement was freely negotiated; and (3)
whether there was knowing misrepresentation or concealment of a known fact. See
Bynum v. Prudential, 129 S.W.3d 781, 788-89 (Tex. App.—Houston [1st Dist.] 2004,
pet. denied).

          As to the first prong, Nxcess is an auto dealership that sells 150-200 cars each
month via the Internet. In addition, while Nxcess seems to suggest that statements
by its salesman, Wolfe, should be held to a lower standard because he has an
“eleventh-grade formal education and a G.E.D.,” Nxcess advertised that its salesmen
are among some of the “best qualified” salesmen “anywhere in Houston.” Further,
Wolfe did not negotiate with Kane on his own; rather, Wolfe consulted with his
manager, Ong, during the negotiations. Hence, Nxcess could reasonably be
considered sophisticated in transacting auto purchases over the Internet, and its
salesmen were supervised. 

          Kane holds bachelor of science degrees in finance and economics, and is
employed with a pharmaceutical company. He has purchased approximately 15 new
and used luxury sports cars in the preceding 10 years. However, the transaction at
issue was his first attempt to make a long-distance purchase of a car over the Internet. 

          Nevertheless, we are not convinced that Kane was so unsophisticated that he
did not understand what it means to purchase an item “as is,” or that he could not read
and understand Nxcess’s pre-buy inspection policy. Hence, the agreement could not
be set aside merely due to a disparity in bargaining power. See Bynum, 129 S.W.3d
at 789.

          As to the second prong, the “as is” provision does not appear to have been
freely negotiated. Instead, the “as is” provision appeared in a contract faxed to Kane
three days after he had paid for the car on the ebay website. There is no evidence in
the record that the “as is” provision was discussed during negotiations. See
Prudential, 896 S.W.2d at 162 (concluding that “provision in a standard form
contract which cannot be negotiated and cannot serve as the basis of the parties’
bargain” should not be given effect).

          As to the third prong, as discussed above, the evidence shows that a known
fact—that the car had been repainted—was concealed by Nxcess because it was
believed that Kane would not purchase the car if he knew the truth. Kane specifically
asked whether the car had been repainted, and Wolfe took that inquiry to his manager. 
Wolfe was directed by his manager not to disclose that the car had been repainted. 

          Hence, because evidence exists that knowing misrepresentations were made,
we conclude that the “as is” clause may not preclude Kane’s recovery on his claims
as a matter of law. See Weitzel v. Barnes, 691 S.W.2d 598, 601 (Tex. 1985)
(determining that affirmative misrepresentations that plumbing and air conditioning
systems were up to code were actionable in spite of “as is” agreement); Nelson v.
Najm, 127 S.W.3d 170, 176 (Tex. App.—Houston [1st Dist.] 2003, pet. denied)
(determining that affirmative misrepresentations as to condition of real property did
not bar recovery in spite of “as is” agreement); see also Smith, 911 S.W.2d at 433
(concluding that “as is” clause does not as matter of law negate causation when real
property sellers affirmatively misrepresented condition of property as “excellent” in
advertisement and made oral misrepresentations as to condition). 

          3.       Negating Causation: Failure to Inspect 

          In his third issue, appellant contends that his failure to inspect the car prior to
purchase does not negate causation because his inclination to inspect was thwarted
by oral misrepresentations by Nxcess. Nxcess argues that Kane had a contractual
duty to inspect the car prior to purchase and that failure was the actual cause of his
injury.

          The evidence shows that Kane specifically asked if he needed to travel to Texas
and inspect the car or if it was as represented. Wolfe responded again that the car had
not been repainted. The Texas Supreme Court has held that “[f]ailure to use due
diligence to discover someone’s fraud will not act to bar the defense of fraud to the
contract.” Koral Indus. v. Security-Connecticut Life Ins. Co., 802 S.W.2d 650, 651
(Tex. 1990). Hence, Nxcess cannot induce Kane to enter the purchase contract with
fraudulent misrepresentations, then defeat Kane’s claim by arguing that Kane might
have discovered the truth if he had exercised proper care. See id.; Weitzel, 691
S.W.2d at 601 (concluding that affirmative misrepresentations that plumbing and air
conditioning systems were up to code was actionable in spite of failure to inspect);
Nelson, 127 S.W.3d at 175 (finding causation when seller’s statements created false
impression, thereby thwarting buyer’s inspection).

          Even under a contract providing for inspection, an affirmative
misrepresentation is actionable under the DTPA. Weitzel, 691 S.W.2d at 601. Nxcess
could have chosen to remain silent concerning the issue but decided to affirmatively
misrepresent that the car had qualities that it did not. See id. Hence, we conclude that
Kane’s failure to inspect did not preclude recovery on his claims.

          In sum, the Texas Supreme Court has found that

[a] seller cannot . . . assure the buyer of the condition of a thing to obtain
the buyer’s agreement to purchase “as is,” then disavow the assurance
which procured the “as is” agreement. Also, a buyer is not bound by an
“as is” agreement if he is entitled to inspect the condition of what is
being sold but is impaired by the seller’s conduct. . . . In circumstances
such as these an “as is” agreement does not bar recovery against the
seller.

 
Prudential, 896 S.W.2d at 162.

          We conclude that Kane produced some evidence on which reasonable minds
could differ as to whether Nxcess had actual knowledge of the fact that the car had
been repainted and whether it chose to fraudulently induce Kane to purchase the car,
thereby causing Kane’s injury. Hence, we find that Kane has met his burden under
Rule 166a(i) to present more than a scintilla of evidence as to causation. 

          Further, because we take all evidence favorable to the non-movant as true in
a Rule 166a(c) motion, and resolve all doubts about the genuine existence of a
material fact against the movant, we conclude that Nxcess has failed to carry its
burden to show that Kane cannot show causation as a matter of law. We find that
Kane met his burden under Rule 166a(c) by raising a question of material fact that
precludes summary judgment.

          We sustain Kane’s second and third issues.

CONCLUSIONHaving determined that the trial court erred in granting summary judgment
because appellant met his burden to present more than a scintilla of evidence as to
causation and to raise a genuine issue of material fact as to causation, we need not
consider appellant’s remaining issues on appeal. We reverse the trial court’s
judgment as to appellant’s DTPA and fraud claims and remand for further
proceedings.
          



                                                             Laura Carter Higley 
                                                             Justice

Panel consists of Chief Justice Radack, and Justices Higley and Bland.